IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

AT HUNTINGTON

ROBERT K. CLARK,

       Plaintiff,

V.                                    CIVIL ACTION NO. 3:06-0247

MICHAEL J. ASTRUE,
Commissioner of Social Security,

       Defendant.

**<u>MEMORANDUM ORDER</u>**

In this action, filed under the provisions of 42 U.S.C. §§405(g) and 1383(c)(3), plaintiff seeks review of the final decision of the Commissioner of Social Security denying his applications for disability insurance benefits and supplemental security income based on disability.  The case is presently pending before the Court on cross-motions of the parties for judgment on the pleadings and plaintiff's motion to remand.

Plaintiff filed his applications on November 20, 2003, alleging disability commencing June 14, 2003, as a consequence of heart problems, diabetes, joint problems and high blood pressure. On appeal from initial and reconsidered denials, an administrative law judge, after hearing, found plaintiff not disabled in a decision which became the final decision of the Commissioner when the Appeals Council denied a request for review.  Thereafter, plaintiff filed this action seeking review of the Commissioner's decision.

At the time of the administrative decision, plaintiff was forty-eight years of  age and had obtained a high school education and two years of college.  His past relevant employment experience

consisted of work as a telemarketer and in sales and marketing.  In his decision, the administrative law judge determined that plaintiff suffers from "coronary artery disease, diabetes, osteoarthritis of the left shoulder and obesity," impairments he found severe.   Though concluding that plaintiff was unable to perform his past work,[1]  the administrative law judge determined that he had the residual functional capacity for a significant range of light level work.  On the basis of this finding, and relying on Rule 202.21 of the medical-vocational guidelines[2] and the testimony of a vocational expert, he found plaintiff not disabled.

As noted, plaintiff has moved to remand this case so the Commissioner can consider additional evidence he has submitted. The evidence consists of reports of January 4, 2006 MRI's of the cervical spine and the brain; results of a February 2, 2006 carotid duplex scan; reports of March 8, 2006 MRI of the lumbar spine and March 10, 2006 CT scan; report of March 28, 2006 nerve conduction studies of the lower extremities; a May 3, 2006 letter from Dr. David Caraway detailing his evaluation of plaintiff at the request of treating physician, Samuel Adams; and notes from Dr. Ahmad detailing treatment on February 28, March 13, and March 28, 2006. It is plaintiff's assertion that this is "new and material" evidence which requires remand to the Commissioner for further consideration.

Remand on the basis of newly discovered evidence is appropriate if: (1) the evidence is relevant and not cumulative; (2) the Commissioner's decision "might reasonably have been different" had that evidence been presented; (3) good cause for failure to submit the evidence before the Commissioner is established; and (4) plaintiff offers "at least a general showing of the nature"

---

[1]This finding had the effect of shifting a burden of production to the Commissioner with respect to other work plaintiff was capable of performing.  Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981); McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

[2]20 C.F.R. Part 404, Subpart P, Appendix 2, Table No. 2.

2

of the newly discovered evidence. <u>Borders</u> v. <u>Heckler</u>, 777 F.2d 954, 955 (4th Cir. 1985). The Court, concluding that deficiencies in the record require remand, finds that evaluation of the new evidence under these standards is unnecessary. The Commissioner should, however, consider the new evidence on remand.

The medical reports document a mild myocardial infarction in April 2000 followed by angioplasty and stent placement. Less than one year later, in April 2001, plaintiff had coronary artery by-pass grafting in two arteries. By August 13, 2001 he had been released by his surgeon and was back at work.

During examination with the Commissioner's consultant, Dr. Nutter, on July 19, 2004, plaintiff had tenderness in the left hip and knee with limited range of motion, and there was "give-away" weakness in the hip. Limited motion was observed in the dorsolumbar spine, and plaintiff was unable to stand on the left leg alone or to squat. He could heel and toe walk but was unable to adequately perform a tandem gait due to poor balance. Dr. Nutter felt degenerative arthritis was the probable cause for plaintiff's joint pain, and an x-ray of the left knee was interpreted as showing "mild" degenerative arthrosis.[3] X-rays of the hips taken March 3, 2004 were interpreted as showing some inferior medial spurring while the knees showed distal and proximal patellar spurring. Dr. Glen Imlay treated plaintiff for osteoarthritis of the left hip and knee, upper extremity biceps tendinitis, subacromial bursitis, left shoulder weakness and carpal tunnel syndrome. X-rays of the left shoulder and cervical spine were interpreted as showing mild degenerative changes and degenerative disc disease, respectively, while x-rays of the thoracic spine and left hip were considered normal. Treatment included injections into the left biceps tendon, left subacromial bursa, physical therapy and medication.

---

[3]This term refers to disease of a joint. <u>Attorney's Dictionary of Medicine</u>, A-542 (2007).

3

Plaintiff also suffers from Type II diabetes, initially treated with oral medication and poorly controlled. At a June 14, 2004 examination with his treating endocrinologist, plaintiff's peripheral pulses were considered only "fair" overall, and posterior pulses were absent as was vibratory sensation. No reflexes could be elicited below the waist. Diabetic peripheral neuropathy was diagnosed along with poorly controlled diabetes. Plaintiff also suffers from morbid obesity with his weight generally measured at over 350 pounds.[4]

Unfortunately, none of the treating or examining physicians evaluated plaintiff's residual functional capacity. The state agency medical advisors, in assessments dated March 10 and April 21, 2004 concluded plaintiff could perform light level work requiring only occasional climbing, balancing, stooping, kneeling, crouching or crawling and no climbing of ladders, ropes or scaffolds. Further, both evaluators felt plaintiff should be precluded from concentrated exposure to extremes of heat and cold, fumes, odors and pulmonary irritants. Both assessed limitation on exposure to hazards, although of varying degrees. The administrative law judge adopted the state agency physicians' findings with regard to light level work, no climbing of ladders, ropes or scaffolds and no more than occasional climbing of ramps and stairs and other postural activities. With regard to environmental limitations, he concluded plaintiff "should avoid exposure" to cold, heat, dust, fumes, gases, poor ventilation and hazards.

Plaintiff also received treatment for problems with depression and anger-related issues. Lisa Tate, M.A., who evaluated him for the Commissioner on February 2, 2004, diagnosed major depressive disorder with anxiety features, moderate, but assessed social functioning and concentration, persistence and pace as being within normal limits.

---

[4]Plaintiff had weighed as much as 732 pounds but stated diabetes caused him to lose nearly 400 pounds.

Plaintiff reported increased mood swings and anger problems at an April 27, 2004 appointment at Carl Johnson Medical Center and was subsequently referred to the Prestera Center's "IOP" program based on complaints of increasing anxiety, depression and anger over his situation. During the "Initial Psychiatric Evaluation," Dr. Enid Kurtz diagnosed depressive disorder, recurrent, "severe," without psychotic features; cannabis abuse, episodic, continuous; and histrionic personality. She prescribed medication and also referred plaintiff to a therapist. During an April 18, 2005 exam, Dr. Kurtz described plaintiff as "moderately to profoundly" depressed.

Jennifer Crespo, M.A., L.P.C., saw plaintiff for therapy initially on April 22, 2005 and diagnosed major depressive disorder, recurrent, severe, without psychotic features. She rated plaintiff's global assessment of functioning at fifty, consistent with serious to moderate symptoms.[5] On May 9, 2005, Dr. Kurtz, noting some improvement in plaintiff's mood, expressed the opinion that he may have bipolar II disorder.

Again, no treating source submitted an assessment of plaintiff's mental residual functional capacity. The only assessment in the record is from the state agency psychologist who concluded plaintiff would have moderate limitations on his abilities to work in coordination with or proximity to others without being distracted by them; complete a normal workday and workweek without interruption from psychologically-based symptoms and perform at a consistent pace; and get along with co-workers or peers without distracting them or exhibiting behavioral extremes. It was this evaluator's opinion that plaintiff retained the capacity to understand, remember and carry out one to four-step routine instructions within a low social interaction demand work setting. The administrative law judge found this assessment persuasive and adopted it.

---

[5]A rating of 41-50 denotes serious symptoms, while a rating of 51-60 represents moderate symptoms. See, Diagnostic and Statistical Manual of Mental Disorders, 4th Ed., American Psychiatric Association, 1994 at 32.

In adopting the state agency medical advisors' findings as to both physical and mental functioning, the administrative law judge did not acknowledge that a significant amount of relevant evidence was submitted after the completion of these assessments, and he did not resolve the conflicts created by the later-submitted reports. For instance, the date of the most recent physical residual functional capacity assessment is April 21, 2004, fifteen months before the hearing and over eighteen months before the administrative law judge's decision. It is also prior to a June 14, 2004 report from the endocrinologist documenting the findings which he felt were indicative of diabetic peripheral neuropathy and to the submission of all of Dr. Imlay's treatment notes which began on April 16, 2004 and, as noted, specifically document complaints, exam findings and treatment for a number of left upper and lower extremity problems.

Similarly, the date of the most recent assessment of mental residual functional capacity is April 28, 2004. While the evaluator does find several moderate limitations on functioning due to plaintiff's reports of anger problems and difficulty tolerating others, there was no consideration of the later-submitted reports from Dr. Kurtz at Prestera or Jennifer Crespo. These reports contain diagnoses of significant levels of depression. It is also noted that the administrative law judge did not discuss or even mention these reports in his decision, only the February 2004 consultative exam obtained by the Commissioner.

As the court pointed out in Arnold v. Secretary of Health, Education and Welfare, 567 F.2d 258, 259 (4th Cir. 1977), "[u]nless the [Commissioner] has analyzed all of the evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the Court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.'" Though the Court recognizes that resolution of conflicts in the evidence is a function of the Commissioner,

not the courts, <u>Thomas</u> v. <u>Celebreeze</u>, 331 F.2d 541 (4th Cir. 1964), before the Court can conduct a reasoned review of his decision, the Commissioner must "explicitly indicate 'the weight given to all relevant evidence,'" articulating "the reasons underlying his actions ... ." <u>Murphy</u> v. <u>Bowen</u>, 810 F.2d 433, 437 (4th Cir. 1987). In light of the seeming lack of attention given the reports and clinical findings from Drs. Imlay, Jennings and Kurtz and Ms. Crespo, and the administrative law judge's reliance on outdated assessments from non-examining evaluators, the Court concludes the residual functional capacity findings and the findings of the administrative law judge – both mental and physical – are not supported by substantial evidence, and remand is required for a re-evaluation. Comments and/or assessments from treating sources could be very helpful in re-assessing these issues. Additionally, given the numerous impairments from which plaintiff suffers, the administrative law judge must be mindful to consider carefully the overall effect of all of those impairments in combination.[6]

On remand, the administrative law judge must also reconsider plaintiff's credibility in light of the proper standards. The regulations describe a two-step process for evaluating symptoms.[7] The administrative law judge must first consider whether there is a underlying medically determinable physical or mental impairment which could reasonably be expected to produce the individual's pain or other symptoms. If such an impairment is established, the administrative law judge must then evaluate the intensity, persistence and limiting effects of the symptoms to determine the extent to which they limit the claimant's ability to do basic work activities.[8] The latter step requires

---

[6]<u>See</u>, 42 U.S.C. § 423(d)(2)(C); <u>Walker</u> v. <u>Bowen</u>, 889 F.2d 47, 50 (4th Cir. 1989); <u>Reichenbach</u> v. <u>Heckler</u>, 808 F.2d 309, 311-12 (4th Cir. 1985).

[7]<u>See</u>, 20 C.F.R. § 416.929; SSR 96-7p; <u>Craig</u> v. <u>Chater</u>, 76 F.3d 585, 592-96 (4th Cir. 1996).

[8]<u>Id</u>.

consideration of both the objective medical evidence and subjective evidence of a claimant's pain or other symptoms, and, while objective medical evidence may be "crucial" in evaluating the intensity, persistence and limiting effects of symptoms, Craig v. Chater, supra at 595, subjective complaints may not be discredited solely because they lack objective support. Hines v. Barnhart, 453 F.3d 559, 565 (4th Cir. 2006). Here, the administrative law judge made no mention of this credibility analysis but simply highlighted portions of plaintiff's testimony and then determined it was only partially credible, citing to a few inconsistencies in the record. A more thorough analysis should be performed on remand and the parties given an opportunity to submit additional evidence.

On the basis of the foregoing, it is **ORDERED** that this case be remanded to the Commissioner for further proceedings consistent with this Memorandum Order.

ENTER:      August 27, 2009


MAURICE G. TAYLOR, JR.
UNITED STATES MAGISTRATE JUDGE